# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DANNY JACK HART, | ) |
| Plaintiff, | ) Case No.: 2:20-cv-00773-GMN-DJA |
| vs. | ) |
| | ) **ORDER** |
| LOWE'S HOME CENTERS, LLC, *et al.*, | ) |
| Defendants. | ) |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 57), filed by Defendant Lowe's Home Centers, LLC, ("Lowe's" or "Defendant"). Plaintiff Danny Jack Hart ("Hart" or "Plaintiff") filed a Response, (ECF No. 63), to which Defendant filed a Reply, (ECF No. 66). For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I. BACKGROUND

On April 3, 2018, Hart entered the Lowe's store on Boulder Highway in Las Vegas, NV. (Mot. Summary Judg. ("MSJ") 2:22–24, ECF No. 57 (citing Hart Resp. First Set of Interrogatories 2:19, Ex. A to MSJ, ECF No. 57-1)). Hart explained to an employee that he was a disabled veteran and would need assistance with grabbing larger items, notably 6' x 8' wooden panels. (*Id.* 2:25–27 (citing Hart Resp. First Set of Interrogatories 2:20–28, Ex. A to MSJ)). Plaintiff was assisted by an employee, John Buchanan, in retrieving two wooden panels from an area of the store that was cordoned off with a safety cable. (*Id.* 2:27–3:3 (citing Hart Resp. First Set of Interrogatories 2:26–28, Ex. A to MSJ)). While loading the wooden panels onto a shopping cart, Plaintiff's friend, Irene Lindsay, noted that one of the panels was warped, and Plaintiff requested a replacement. (*Id.* (citing Hart Resp. First Set of Interrogatories 3:4–6,

Ex. A to MSJ)). Buchanan pulled a third panel from the shelves, and Hart again noted that the third panel was also warped and requested another replacement. (*Id.* 3:5–9 (citing Hart Resp. First Set of Interrogatories 3:7–10, Ex. A to MSJ)). Buchanan then stated he "only ha[d] so much time for each customer" and directed Hart to "get in there and find what you want, and I [the employee] will be back." (Hart Resp. First Set of Interrogatories 3:10–15, Ex. A to MSJ). Buchanan left the aisle and Hart began inspecting different wooden panels. Shortly thereafter, panels began falling onto Hart, hitting him in various areas. (MSJ 3:9–11). Although Hart testified that he didn't remember how many panels he moved, he admitted to moving at least one panel while inspecting them. (*Id.* 4:19–28).

On March 25, 2020, Hart filed his lawsuit in the Eighth Judicial District Court of Clark County, Nevada. (MSJ 10:9–11). Lowe's removed to this Court on the basis of diversity jurisdiction; the Court thereafter denied Hart's Motion to Remand in which Hart alleged that complete diversity no longer existed because Hart's First Amended Complaint defeated diversity by adding two defendants with the same citizenship as Hart. (*See* Mot. Remand 2:6–11, ECF No. 42). The Court rejected this argument, finding that the operative complaint was still Hart's initial complaint because (1) the First Amended Complaint was filed without leave of court, thereby making it invalid, and (2) even after receiving leave to file the First Amended Complaint, Hart failed to do so. (*See* Order 6:4–15, ECF No. 61). Although the Court provided Hart an opportunity to re-file his First Amended Complaint, Hart chose not to.[1] Accordingly, the initial Complaint remains operative, and the Court disregards the additional causes of action asserted by Hart in the First Amended Complaint.

///

---

[1] In his First Amended Complaint, Plaintiff sought to add Jack Buchanan and Stan Gardenhire as defendants, thereby defeating diversity. Plaintiff additionally sought to add two additional causes of action: a negligent hiring, training, supervision and retention claim, and a negligent inspection/maintenance claim. (*See* Mot. Leave, ECF No. 35).

The Complaint asserts three causes of action: (1) negligence; (2) strict liability; and (3) loss of consortium. (*See generally* Compl., ECF No. 1-2). Lowe's moved for Judgment on the Pleadings on Hart's second and third causes of action, and Hart did not file a response to Lowe's Motion. (*See generally* Mot. Judg. Pleadings, ECF No. 20). Noting Hart's lack of response, the Court granted judgment in favor of Lowe's on the strict liability and loss of consortium claims. Thus, the only remaining cause of action is Hart's negligence claim. Lowe's now moves for summary judgment.

## II.   **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid

summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id*. at 249–50.

### III.     DISCUSSION

Under Nevada law, "to prevail on a traditional negligence theory a plaintiff must prove that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injuries; and (4) the plaintiff suffered damages." *Stein v. Marshalls of MA, Inc.*, 2:11-cv-01353-GMN-VCF, 2013 WL 2319141 at *3 (D. Nev. May 28, 2013) (citing *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012)). Moreover, "A business owes its patrons a duty to keep the premises in a reasonably safe condition for use." *Linnell v. Carrabba's Italian Grill, LLC*, 833 F.Supp.2d 1235 (D. Nev. 2011) (citing *Sprague v. Lucky Stores, Inc.*, 849 P.2d 322, 322 (Nev. 1993)). The owner or occupier of land has a duty to inspect the premises to discover dangerous conditions not known to him and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. *Twardowski v. Westward Ho Motels, Inc.*, 476 P.2d 946, 947 (Nev. 1970).

Lowe's argues that Hart's negligence claim fails because Hart cannot establish that Lowe's breached a duty owed to Hart. Specifically, Lowe's argues that (1) Hart's actions, by moving the panels, caused them to fall on him; (2) Hart fails to show that Lowe's breached its

duty of reasonable care to Hart while on Lowe's premises; and (3) Hart fails to procure evidence showing that Lowe's failed to inspect or maintain its premises.

Hart argues that Lowe's was negligent by (1) "display[ing] the wooden fence panels vertically rather than horizontally despite being aware that storing them horizontally would have reduced the risk that they would fall on and injure someone;" (2) "fail[ing] to post any warning on or near the wooden fence panels;" (3) "fail[ing] to train Buchanan to provide a warning to customers after he removed the safety cable;" and (4) allowing Buchanan "to assist [Hart] but to then do so negligently by removing the safety cable, instructing [Hart] to file undamaged panels himself, and then walking away without providing any warning to [Hart] and without offering to send another Lowe's employee to finish the task of assisting [Hart]." (Resp. MSJ ("Resp.") 18:16–26, ECF No. 18). Hart thus purports two theories of liability: Lowe's failed to reasonably mitigate a known risk when it displayed the wooden panels vertically, and Lowe's was negligent in failing to warn Hart of a known risk. The Court evaluates each of Hart's arguments.

### A. Improper Display

To succeed on its summary judgment motion, Lowe's must either present evidence to negate an essential element of Hart's claim or demonstrate that Hart failed to make a showing sufficient to establish an element essential his negligence claim. *Celotex Corp.*, 477 U.S. at 323–24. Hart argues that Lowe's "breached its duty of care to Hart and caused Hart's injuries by *failing to display and/or secure the panels in a manner that would not result in injury* any time a customer attempted to look at the available stock." (Resp. 12:15–20) (emphasis added). Hart further contends, "it was undeniably foreseeable to Lowe's . . . that Lowe's decision to display the wooden fence panels vertically rather than horizontally had increased the danger posed by those panels, and specifically the danger that those panels would fall on and injure a customer." (Resp. 14:6–10). But maintaining an environment "that would not result in injury"

1 is not what courts require of landowners.  Rather, under Nevada law, Lowe's must take
2 reasonable precautions to protect the invitee from foreseeable dangers. *Twardowski*, 476 P.2d at
3 947.  Defendant's Federal Rules of Civil Procedure Rule 30(b)(6) deponent, Jason Brooks,
4 testified that Lowe's implemented reasonable precautions and installed safety cables in the area
5 where the wooden panels were stored to "help in case of merchandise falling towards the
6 aisle[.]" (MSJ 7:12–15 (citing Brooks Depo. 94:17–95:2, Ex. D to MSJ)).[2]  Based on this
7 testimony, the Court finds that Lowe's met its burden by demonstrating that Hart failed to make
8 a showing sufficient to establish an element essential to his negligence claim.

9 Because Lowe's has produced sufficient evidence showing that Hart has failed to
10 establish that Lowe's breached its duty of care, the burden then shifts to Hart.  To survive
11 summary judgment, Hart needs to present "cognizable evidence for a prima facie case."
12 *Johnson v. Costco Wholesale Corp.*, 827 Fed.Appx. 637, 638 (9th Cir. 2020).  Despite an
13 opportunity to investigate the clam in discovery, Hart has not provided any evidence supporting
14 his contention that Defendant's safety precautions were unreasonable.  Although the Court
15 agrees that "displaying the panels vertically rather than horizontally increased the risk that they
16 would fall on and injure a customer," (*see* Resp. 13:3–7), such increase in risk was mitigated by
17 Defendant's implementation of the safety cable to stop the wooden panels in the event they fell
18 forward into the aisle.  Hart "must do more than simply show that there is some metaphysical
19 doubt as to the material facts," *Orr*, 285 F.3d 764, 783 (9th Cir. 2002).  For example, in
20 *Johnson*, the Ninth Circuit reversed a district court's grant of summary judgment in favor of the
21 defendant, noting that, among other things, the plaintiff "produced evidence that items fell off
22 the conveyor belt frequently." 827 Fed.Appx. at 640.  The Ninth Circuit thus held that the

---

[2] Brooks also testified generally regarding Defendant's safety practices, including daily inspection of the store premises, monthly conveyances of the store's "safety team" to identify specific tasks and reviews that need to be implemented to increase safety in the store, and general onboarding training practices. (*See generally* Brooks Depo., Ex. D to MSJ).

evidence the plaintiff provided was "enough to create a genuine dispute of material fact as to whether [the defendant] 'reasonably could anticipate that the hazardous condition would occur on a regular basis' and whether [the defendant] exercised reasonable care under the circumstances[.]" *Id.* (quoting *Shuck v. Texaco Ref. & Mktg., Inc.*, 872 P.2d 1247, 1249 (Ariz. Ct. App. 1994)).  In contrast here, Hart presents no evidence that would create a genuine dispute of material fact, such as evidence suggesting that the wooden panels fell frequently or at a rate higher than other items, or that the safety cables were an inadequate safety precaution. Construing the facts in the light most favorable to Hart, the Court finds that no reasonable jury could find that Lowe's failed to take reasonable precautions to secure its premises.  Although Hart had an opportunity to develop his theory in discovery, Hart failed to do so and now relies on conclusory allegations that cannot withstand summary judgment.

Because Hart has not shown that a genuine issue of material fact exists, the Court GRANTS Defendant's Motion for Summary Judgment insofar as it relates to Hart's argument that Defendant was negligent in storing the wooden panels vertically.

**B. Failure to Warn**

A landlord has a duty to warn invitees of hidden dangers that the invitee is not aware of. *Twardowski*, 476 P.2d at 947.  Nevada applies the "obvious danger rule" in determining whether a defendant's failure to warn invitees of potential hazards amounts to negligence. *See, e.g.*, *Schlicting v. Outback Steakhouse of Fla., LLC*, No. 2:09-cv-01896-GMN-LRL, 2010 WL 5249844 at *3 (D. Nev. Dec. 16, 2010) ("If there is a dangerous or unsafe condition on the premises, a proprietor has a duty to warn invitees, but if the condition is obvious no warning is required." (citing *Harrington v. Svufy Enterprises*, 931 P.2d 1378 (Nev. 1997)).  Hart argues that Lowe's (1) failed to "post any warning on or near the wooden fence panels;" (2) failed to "train Buchanan to provide a warning to customers after he removed the safety cable;" and (3)

///

failed to "provide a warning to Hart" of the potential danger of wooden panels falling after Buchanan removed the safety cable and walked away.

Hart first argues he was not required to provide expert testimony on the issue of whether it was negligent for Lowe's to store the wooden panels vertically because the alleged hazard "would be obvious to laymen." (Resp. 16:2 (citing *Scolaro v. Vons Companies, Inc.*, 2:17-cv-01979-JAD-VCF, 2019 WL 7284738, at *8 (D. Nev. Dec. 27, 2019)). This directly conflicts with his "failure to warn" argument. If the danger was "obvious" to a layperson, then "no warning is required." *Schlicting*, 2010 WL 5249844 at *3. Construing the facts in the light most favorable to Hart, the Court finds that any risk of harm to Hart was obvious. Hart was aware of the danger that might result in handling heavy objects, including the 6' x 8' wooden panels, and admitted that upon entering the store, he notified an employee that he "was a disabled veteran" and "would need assistance loading the large heavy items." (MSJ 2:24–26 (citing Hart Resp. First Set of Interrogatories 2:20–28, Ex. A to MSJ)). Hart again emphasized his disability when Buchanan greeted him. (*Id.*). Hart was aware that the wooden panels were secured because he testified that, upon approaching the wooden panels, he noticed "there was a big cable across them." (*See* Hart Depo. 117:21–25, Ex. C to MSJ, ECF No. 57-3). Due to Hart's awareness of his physical limitations with handling heavy items, the size of the wooden panels, and the presence of a safety cable, no reasonable jury could find that any potential harm to Hart was not obvious. *See, e.g., Sassoon v. Lowe's Home Centers, LLC*, 643 Fed.Appx. 624, 626 (9th Cir. 2016) (affirming grant of summary judgment because "the considerable size of the ladder and its position in the middle of the aisle" was obvious and thus did not present question of fact for the jury regarding defendant's duty to warn).[3]

---

[3] The Ninth Circuit has held that, although "[w]hether the danger was obvious to [a] plaintiff [is] a question for the jury, . . . that issue may be resolved as matter of law where . . . there is no genuine dispute as to any material fact . . . and a reasonable jury could reach only one conclusion." *Allen v. Lowe's Home Centers, LLC*, No. 21-55836, 2022 WL 1599273, at *1 (9th Cir. May 20, 2022) (citations and internal quotation marks omitted).

Although a landowner does not have a duty to warn of obvious danger, the landowner may nonetheless have a duty to warn if it was foreseeable that the danger was likely to cause injury. *Sassoon*, 643 Fed.Appx. at 626 (9th Cir. 2016) (applying California law); *see also Rogers v. Tore, Ltd.*, 459 P.2d 214, 215 (Nev. 1969) (applying Nevada law, and noting that invitee's knowledge of danger does not bar recovery when possessor of land "should anticipate the harm despite such knowledge or obviousness." (citation omitted)). The Restatement (Second) of Torts § 343A cmt. f (1965) is instructive on this point. The Restatement notes, liability may arise "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."

Here, Hart provides scant evidence showing that by removing the safety cables and leaving Hart unattended, Lowe's would anticipate the wooden panels falling and injuring Hart. Specifically, Hart offers no cognizable evidence that *without* the safety cables, the wooden panels were *more likely* to fall and there is no evidence on the record that shows that the safety cables, when engaged properly, stopped the wooden panels from falling. Rather, the evidence shows that the safety cables were not intended to stop the wooden panels from falling forward, but instead were added as a safety mechanism to mitigate impact in the event the panels did fall forward into the aisle. (*See* Brooks Depo. 52:3–53:24, Ex. D to MSJ ("The safety cables are not designed for not allowing customer access. They're designed to help mitigate the risk of impact if merchandise were to fall[.]")). Accordingly, there is no evidence that by removing the safety cables, Buchanan created an increased risk that the wooden panels would fall such that Lowe's might anticipate any harm to Hart. Hart is thus incorrect that Buchanan's act of removing the safety cable presented a heightened "risk that the panels would fall" thereby creating a duty to warn Hart. (Resp. 14:11–12).

///

Moreover, the parties do not dispute that the wooden panels did not begin to fall until after Hart began to move the wooden panels around. Relying on this fact, Lowe's not only contends that it was not negligent, but that Hart was himself negligent in continuing to remove the wooden panels on his own. Although Hart took the initial steps to mitigate this danger by seeking assistance from a Lowe's employee, he was met with an employee who was impatient and curt. Buchanan's actions may have been unwarranted and unprofessional, but poor customer service does not per se prove negligence.

Hart twice testified that Buchanan indicated that he would return after helping another customer. (*See* Hart Resp. First Set of Interrogatories, Ex. A to MSJ); (Hart Depo. 117:19–120:12, Ex. C to MSJ). Despite Buchanan's notice that he intended to return, Hart, cognizant of his own limitations, nonetheless began reaching for and inspecting the large wooden panels. When they began to fall, Hart was unable to stop them, resulting in his injuries. Lowe's thus argues that "the panels did not move until the Plaintiff himself started moving them," and that "no action by any Lowe's employee could have caused [Plaintiff's] accident[.]"[4] (MSJ 14:21–15:5). Although it was in poor form for the employee to leave Hart unattended, the employee indicated his intent to return to assist Hart after assisting another customer.[5]

The Court thus finds that, viewing the facts in the light most favorable to Hart, Lowe's presented sufficient evidence that Hart has not established an essential element of his

---

[4] Hart contends that he "followed Buchanan's instructions" in attempting to locate a wooden panel that was not warped. (*See* Resp. 18:27–19:2). But Buchanan's poor customer service did not erase the risk that was known and apparent to Hart. Hart "expressly requested assistance due to his disability and the heavy bulky nature of the wooden fence panels" because he understood that his disability created a physical limitation that made it difficult for him to carry or otherwise handle the panels, and other large objects, on his own. (Resp. 12:23–26).

[5] The Court emphasizes that Hart should not be subjected to differential treatment because of his disability; however, there were other options Hart could have taken to retrieve his list of items safely and securely. For example, and without limitation, Hart could have waited until Buchanan returned, asked his domestic partner (who was also present) for additional assistance, or requested to work with another employee who had the patience and expertise to assist him.

negligence claim, and Hart has failed to establish that a genuine issue of material fact exists. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 57), is **GRANTED**.  The Clerk of Court is instructed to enter judgment in favor of Defendant and close the case.

**DATED** this __14__ day of August, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court